IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

In re: )
)
ACME HOLDING COMPANY, INC., )   No. 2:14-bk-71315-BTB
)   (Chapter 11)
Debtor. )

## MOTION TO DISMISS OR IN THE ALTERNATIVE TO CONVERT TO CHAPTER 7

Comes now Chambers Bank ("Chambers"), a secured creditor in these proceedings, by its attorneys, Dover Dixon Horne PLLC, and moves this Court to dismiss the above-styled Chapter 11 bankruptcy case (the "Bankruptcy Case"), or, in the alternative, to convert the Bankruptcy Case to a case under Chapter 7, pursuant to 11 U.S.C. §§ 1112(b)(1) and (b)(4), for cause, as the Debtor, Acme Holding Company, Inc. (the "Debtor"), cannot propose and confirm a feasible plan in a reasonable time, also as the Debtor continues to experience substantial and continuing losses and diminution of the estate, and also as there is a complete absence of a likelihood of a successful rehabilitation by the Debtor.

### INTRODUCTION

As shown below, the Bankruptcy Case should be dismissed as the Debtor is experiencing continuing losses and diminution to the Debtor's estate and cannot be rehabilitated in a reasonable amount of time. The Debtor's current monthly income (*i.e.*, very nearly "zero" dollars) is and has been well below the Debtor's monthly operating expenses, including any debt repayment to Chambers, which, in and of itself, merits a conversion or dismissal pursuant to 11 U.S.C. § 1112(b).

Additionally, the Debtor is unable to propose and confirm a feasible plan in a reasonable amount of time, constituting cause pursuant to 11 U.S.C. § 1112(b).

## FACTS

Chambers is a state chartered bank duly organized and operating under the laws of the State of Arkansas and which has its principal office and place of business located in Danville, Arkansas.

The Debtor commenced the Bankruptcy Case by filing a voluntary petition under Chapter 11 of Title 11 of the Bankruptcy Code (the "Bankruptcy Code") on April 29, 2014. The Debtor is acting herein as a debtor in possession, and no trustee has been appointed in the Bankruptcy Case.

The Debtor is a holding company which owns 100% of the issued, authorized, and outstanding common capital stock of Allied Bank, an Arkansas state chartered bank ("Allied Bank"). The Debtor is regulated by the Federal Reserve Board pursuant to the Bank Holding Company Act of 1956 codified at 12 U.S.C. §§ 1841 - 1850. Allied Bank is regulated by the Arkansas State Bank Department pursuant to the Arkansas Banking Code of 1997 codified at A.C.A. §§ 23-45-101 through 23-50-110 and by federal bank regulatory agencies pursuant to applicable federal law.

Since the filing of the Bankruptcy Case, the Debtor has remained in possession of its property and continued to operate its business. The Debtor's sole business is the Debtor's ownership of the aforesaid common capital stock of Allied Bank.

Chambers is a party in interest and a secured creditor in the Bankruptcy Case. As evidenced by the proof of claim filed herein by Chambers, Chambers' secured claim against the Debtor is in excess of $4,500,000.00 (the "Chambers Claim"). Chambers' aforesaid proof of claim is incorporated herein by reference. The Chambers Claim is secured by, among other things, the Debtor's pledge and assignment of 100% of the issued, authorized, and outstanding common capital stock of Allied Bank.

Allied Bank is not a party to the Bankruptcy Case. Pursuant to 11 U.S.C. § 109(b)(2), Allied Bank is not eligible for relief under the Bankruptcy Code. According to the applicable case law, a bankruptcy court does not have jurisdiction over banks for purposes of liquidation or reorganization, even where a Chapter 11 debtor bank holding company seeks action over subsidiary banks, which are wholly owned by the debtor bank holding company. See *Peoples Bankshares, Ltd. v. Dept. of Banking*, 68 B.R. 536, 16 Collier Bankr. Cas. 2d 124 (Bankr. N.D. Iowa 1986). See also *Franklin Sav. Corp. v. Office of Thrift Supervision, Dept. of Treasury*, 213 B.R. 596, 600 (D. Kan. 1997) ("Indeed, such a backdoor mechanism would undermine the intent of sections 109(b)(2) and (d)"). Pursuant to bankruptcy law, this Court does not have jurisdiction over Allied Bank or any of Allied Bank's property.

On October 27, 2014, the Debtor filed its Disclosure Statement (the "Disclosure Statement") and its proposed Plan of Reorganization (the "Plan") in the Bankruptcy Case.

For the reasons stated herein, the Plan is not feasible, does not fairly or equitably treat the Chambers Claim, and should be denied confirmation. The Plan is not confirmable and the inability to propose a feasible plan in a reasonable amount of time constitutes "cause" pursuant to 11 U.S.C. § 1112(b) for conversion or dismissal.

### ISSUE IN QUESTION

Section 1112(b) of the Bankruptcy Code provides that "the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b) (emphasis added). "Because the [Bankruptcy] Code provides no definition of what

constitutes "cause" under (Section 1112(b)), courts must determine whether discretionary relief is appropriate on a case-by-case basis." *In re Laguna Assoc., LP*, 30 F.3d 734, 737 (6th Cir. 1994).

Once cause has been demonstrated, the Court must convert or dismiss the case, whichever is in the best interests of creditors and the estate. Thus, "once cause is ascertained, section 1112(b) requires a court to move to a second, analytically separate step and to base its decision whether to dismiss or convert on the best interests of creditors and the estate." *In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr. W.D. Tenn. 1992) (internal citations and marks omitted). A "bankruptcy court has broad discretion to dismiss a Chapter 11 case under 11 U.S.C. § 1112(b)." *AMC Mortg. Co. v. Tenn. Dep't of Revenue (In re AMC Mortg. Co.)*, 213 F.3d 917, 920 (6th Cir. 2000). In determining the best interests of creditors, bankruptcy courts defer to the creditors' expressed wishes. "[T]he creditors favored conversion and the creditors are the best judge of their own best interests." *In re Camden Ordnance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 802 (E.D. Pa. 2000).

## ARGUMENT

### The Plan is not Feasible.

Section 1129(a)(11) of the Bankruptcy Code requires as a condition of confirmation that the proposed plan be feasible. See 11 U.S.C. § 1129(a)(11). Lack of feasibility constitutes "cause" under Section 1112(b) of the Bankruptcy Code. See *In re Cantu*, 398 Fed. Appx. 76 (5th Cir. 2010). The feasibility test contemplates "the probability of actual performance of the provisions of the plan." *In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985) (quoting *In re Bergman*, 585 F.2d 1171, 1179 (2d Cir. 1978)). Sincerity, honesty, and willingness are not sufficient to render a plan feasible; nor are visionary promises. *Id.* The test is whether "the things which are to be done after confirmation can be done as a practical matter under the facts." *Id.*

4

The Plan is not feasible and falls far short of satisfying the requirements of § 1129(a)(11) of the Bankruptcy Code, and the Bankruptcy Case should, therefore, be converted or dismissed pursuant to § 1112(b) of the Bankruptcy Code. A determination of feasibility requires an examination of, *inter alia*, "[a]dequacy of the capital structure; the business's earning power; economic conditions; management's ability; the probability of the present management's continuation; and any other factors related to the successful performance of the plan." *In re Polytherm Indus., Inc.*, 33 B.R. 823, 831 (W.D. Wis. 1983) (citing *In re Landmark at Plaza Park, Ltd.*, 7 B.R. 653 (Bankr. D. N.J. 1980).

Examination of the Disclosure Statement reveals nothing that would demonstrate a probability of successful performance of the Plan. In fact, in as much as there is no reliable financial data and no reliable projections for the Debtor, the Disclosure Statement provides creditors with absolutely no information demonstrating, or even suggesting, that the Debtor will be able to perform as promised under the Plan.

The Debtor admits that its "sole source of income is dividends paid on account of its ownership of all the stock of Allied Bank." (Disclosure Statement, page 4). Allied Bank is a wholly separate entity from the Debtor. Beginning in 2010, Allied Bank has undergone examinations by the Federal Reserve Bank of St. Louis (the "Fed") and the Arkansas State Bank Department which have resulted in existing and now pending enforcement actions by the Fed and the Arkansas State Bank Department. Certain conditions of these enforcement actions remain unmet by the Debtor and Allied Bank. (Disclosure Statement, page 2). The "dividends from Allied Bank to [the Debtor] (the Debtor's only source of income) are not allowed pending relief from . . . regulatory enforcement actions." (Disclosure Statement, page 2). "As the payments of such dividends are barred by regulatory orders, [the Debtor] has no current income other than interest earned on its bank account."

(Disclosure Statement, page 4). In fact, "[t]he decision to pay dividends on account of ownership of Allied Bank stock is solely within the discretion of the Board of Directors of Allied Bank and Allied Bank's regulators." (Disclosure Statement, page 5). Clearly under these circumstances, the Debtor fails to demonstrate the probability of actual performance of the provisions of the Plan. Not only is the Debtor's performance not in the Debtor's own control and in absolute reliance upon Allied Bank's performance, but Allied Bank's own performance is also called into question by the pending regulatory actions of the Fed and the Arkansas State Bank Department. Without the probability of actual performance, the Plan is not feasible.

Furthermore, as the Debtor states, "[t]he risk factors that might affect the Debtor's ability to make payment and other distributions required under the Plan are failure of Allied Bank to emerge timely from its current regulatory restrictions, [and] Allied Bank's management choosing to withhold dividend payments. . . ." (Disclosure Statement, page 16). The Debtor also states that "[it] is informed that Allied Bank will seek approval from its regulators at such time as its capital requirements and other regulatory requirements are met to begin dividends for the purpose of debt service." (Disclosure Statement, page 5). These statements by the Debtor indicate that the timing of the Debtor's performance under the Plan is unknown and unknowable and is, in fact, impossible to now know. How then can the Debtor demonstrate the probability of actual performance of the Plan while stating that the time of performance is unknown and completely out of the Debtor's control? Such a situation, coupled with the Debtor's statement, clearly demonstrates and establishes that the Plan is not feasible.

Lastly, the Debtor provides a "drop dead" provision in the Disclosure Statement and the Plan, which provides:

> In the event the projections for Allied Bank's emergence from regulatory restriction to allow it to pay dividends to its shareholder does not occur by the second (2nd) anniversary of the Effective Date [the Debtor] will, at its sole option and after a third-party appraisal of the value of Allied Bank stock, surrender to Chambers Bank or its successor in interest stock of Allied Bank in the equivalent value of the claim of Chambers Bank at that time unless [the Debtor] and Chambers Bank expressly agree to extend the period.

(Disclosure Statement, page 14).

Such a "drop dead" provision cannot make reorganization plans feasible as a matter of law where such alternative does not guarantee payment of the secured claim. See *In re Danny Thomas Properties II Ltd. Partnership*, 241 F.3d 959 (8th Cir. 2001). The Debtor fails to provide any details of guaranteed payment to either Chambers or to unsecured creditors. In fact, the "drop dead" provision hinges on whether the Allied Bank stock will, in fact, be worth the equivalent value of the Chambers Claim at a point in time in the distant future. In addition, the Debtor retains the "sole option" to execute the "drop dead" provision. Furthermore, unless the "indubitable equivalence" is provided by the Debtor to Chambers, the Debtor may not: (i) deprive Chambers of any of the collateral that secures the Chambers Claim, or (ii) deprive Chambers of any of Chambers' equity cushion in that collateral. See e.g. *In re SUD Properties, Inc.*, No. 11-03833-8-RDD, 2011 WL 5909648, at *5 (Bankr. E.D. N.C. Aug. 23, 2011) ("Plans which propose to surrender only a portion of the collateral in satisfaction of the secured claim are much more controversial and more difficult to confirm."); *Arnold & Baker Farms v. United States*, 85 F.3d 1415 (9th Cir. 1996); *In re Milleson*, 83 B.R. 696 (Bankr. D. Neb. 1988). Given these circumstances, the Debtor's "drop dead" provision does and can not render the Plan feasible.

While the Debtor may sincerely believe that it will receive dividends from Allied Bank at some point in the future, the Plan does not demonstrate any probability of actual performance.

Without the probability of actual performance, the Plan is not feasible, which amounts to "cause" for conversion or dismissal pursuant to 11 U.S.C. § 1112(b).

### No Adequate Means of Implementation.

Section 1123(a)(5) of the Bankruptcy Code requires that there be adequate means for plan implementation. This means that the Debtor must offer more than mere speculation about the source of funding for the Plan. See *In re Stuart Motel, Inc.*, 8 B.R. 48, 50 (Bankr. S.D. Fla. 1980). "Relief may be granted under § 1112(b) if debtor can not effectuate a reorganization plan." *In re Local Union 722 Intern. Broth. of Teamsters*, 414 B.R. 443, 452 (Bankr. N.D. Ill. 2009). "The purpose of § 1112(b)(1) is to preserve the estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *Loop Corp. V. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004).

The Plan does not provide adequate means for implementation and falls far short of satisfying 11 U.S.C. § 1123(a)(5), and therefore, the Bankruptcy Case should be converted or dismissed pursuant to 11 U.S.C. § 1112(b). As indicated above, the Debtor has offered no information about where the funding necessary to effectuate the Plan will come from other than its speculation about future Allied Bank dividends, which are currently barred under the pending regulatory actions of the Fed and the Arkansas State Bank Department. Indeed, the Disclosure Statement merely sets forth a wholly unsupported projection of what the Debtor expects its future income and losses to be. Presumably, the Debtor's creditors are to simply assume that sufficient funds to fund the Plan will appear at some time in the future. The lack of concrete means of implementation also constitutes lack of good faith under Section 1129(a)(3) of the Bankruptcy

Code, thereby precluding confirmation of the Plan. *In re Walker*, 165 B.R. 994, 1003 (E.D. Pa. 1994).

Furthermore, as indicated above, the Debtor states that its "sole source of income is dividends paid on account of its ownership of all the stock of Allied Bank." (Disclosure Statement, page 4). And furthermore, the Debtor also states that "[the] dividends from Allied Bank to [the Debtor] ([the Debtor's] sole and only source of income) are not allowed pending relief form . . . [the] regulatory enforcement actions. . . ." (Disclosure Statement, page 2). "As the payment of such dividends are barred by regulatory orders [the Debtor] has no current income other than interest earned on its bank account." (Disclosure Statement, page 4).

These facts, as admitted by the Debtor, demonstrate that the Debtor lacks adequate means for implementation of the Plan, which amounts to "cause" for conversion or dismissal pursuant to 11 U.S.C. § 1112(b).

**The Debtor is Unable to Propose a Confirmable Plan and Conversion or Dismissal is Proper.**

The Plan is likely the best proposal that the Debtor can or is willing to put forward in the Bankruptcy Case. As the Debtor readily admits, there is simply no income produced from the estate assets to service the amount of debt carried by the Debtor. The Debtor's most recent monthly operating report demonstrates that since the filing date of the Debtor's petition in the Bankruptcy Case, the Debtor has suffered an average monthly loss in excess of $150,000.00 (Document #81 in the Bankruptcy Case, page 4). In addition, the Debtor's projections of future cash flow demonstrate that the Debtor will not experience a positive cash flow until 2017. Likewise, the Debtor's equity-holders are unwilling to contribute any new money into the Debtor to produce a viable entity. Instead, the Debtor and Debtor's existing equity-holders, pursuant to the Plan, now seek the opportunity to "bet the bank" for a second time (Disclosure Statement, page 2), but this time, the

"bet" is at the risk of the Debtor's Creditors. Thus, confirmation of the Plan is unwarranted. Because the Debtor can propose no viable plan that can be confirmed, cause exists to convert or dismiss the Bankruptcy Case.

"Cause" to dismiss or convert pursuant to 11 U.S.C. § 1112(b)(4) includes "the inability to effectuate substantial consummation of a confirmed plan." The term "substantial consummation" is defined in the Bankruptcy Code to contemplate three events: (1) transfer of the property proposed by the plan to be transferred; (2) the debtor's assumption of the operation and management of the business; and (3) <u>distribution to creditors</u> and stockholders. 11 U.S.C. § 1101(2) (emphasis added). Inability to effectuate a plan "may also be premised on the practical considerations of the case, and whether the Court thinks that a debtor would be able to submit a plan, achieve confirmation and carry it out." *In re Brooks*, 488 B.R. 483, 491 (Bankr. N.D. Ga. 2013). See also *In re FRGR Managing Member LLC*, 419 B.R. 576 (Bankr. S.D. N.Y. 2009) (a debtor's inability to otherwise fund a Chapter 11 plan, given that its only asset was speculative litigation claims, provided court with requisite cause).

The inability to effectuate a plan also includes whether there is a reasonable likelihood that a plan can be confirmed in a reasonable amount of time. *In re Woodbrook Assoc.*, 19 F.3d 312, 316 (7th Cir. 1994). Such cause exists "where the debtor's failure to file an acceptable plan after a reasonable time indicates its inability to do so whether the reason for the debtor's inability to file is its poor financial condition, the structure of the claims against it, or some other reason." *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989). See also *In re the V Companies and V-S Architects, Inc.*, 274 B.R. 721, 724 (Bankr. N.D. Ohio 2002).

A line of cases support the proposition that where the likelihood of proposing a confirmable plan is remote or impossible, dismissal is appropriate. In, *In re Tampa Medical Tower, LP*, the

10

Court held that the Chapter 11 debtor had failed to propose a plan which would be acceptable to its primary creditor and which would be confirmable under the law, thus the Court granted the creditor's motion to dismiss pursuant to 11 U.S.C. 1112(b). 145 B.R. 99, 101 (Bankr. M.D. Fla. 1992). Such was also the case in *In re BGNX, Inc.*, 76 B.R. 851 (Bankr. S.D. Fla. 1987), where the Court considered the amount of time the case had been pending and the failure to propose a confirmable plan as grounds for conversion to chapter 7. See also *In re Krueger*, 66 B.R. 463 (Bankr. S.D. Fla. 1986).

In the Bankruptcy Case, the Debtor has been given sufficient time to gather itself and propose a feasible and confirmable plan that complies with the requirements of Title 11 of the Bankruptcy Code. The data provided by the Debtor demonstrates that the Debtor cannot, within a reasonable and definite time, generate sufficient revenue to service its substantial debt. As mentioned above, the Debtor admits that its "sole source of income is dividends paid on account of its ownership of all the stock of Allied Bank." (Disclosure Statement, page 4). The Debtor also admits that "[t]he decision to pay dividends on account of ownership of Allied Bank stock is solely within the discretion of the Board of Directors of Allied Bank and its regulators." (Disclosure Statement, page 5). The Debtor has merely indicated that it "expects" to have income sufficient to fund the Plan, but all such income is uncertain in amount and not within the Debtor's control. In fact, the Debtor continues to experience significant losses and diminution to the estate and cannot reasonably be rehabilitated in a reasonable amount of time.

In light of the facts of the Bankruptcy Case, the Debtor fails to demonstrate that it will be able to submit a confirmable plan, achieve confirmation, and carry out a confirmable plan, and as a result of these facts, conversion or dismissal of the Bankruptcy Case for "cause" is proper pursuant to 11 U.S.C. 1112(b).

**The Debtor continues to experience significant losses and diminution of value to the estate.**

The Debtor's most recent monthly operating report (Document #81 in the Bankruptcy Case) details the cash flow of the Debtor. This report demonstrates that the Debtor is unable to generate sufficient revenue to pay even the accruing interest on the Chambers Claim. Together with the total absence of a reasonable likelihood of rehabilitation, this amounts to "cause" for conversion or dismissal pursuant to 11 U.S.C. § 1112(b)(4)(A).

"Cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). To prove cause under 11 U.S.C. § 1112(b)(4)(A), "the first question is whether the bankruptcy estate is suffering some diminution in value. This element can be satisfied by proving that the Debtor has incurred losses or maintained a negative cash flow position after the entry of the order for relief. The second element of (b)(1)[1] is whether the Debtor's financial affairs are such that there is a reasonable likelihood that the Debtor will be rehabilitated. Rehabilitation, in this context, means 'to put back in good condition; re-establish on a firm, sound basis.'" *In re the V Companies and V-S Architects, Inc.*, 274 B.R. 721, 725 (Bankr. N.D. Ohio 2002) (internal cites omitted).

For the first element under 11 U.S.C. § 1112(b)(4)(A) to be met - substantial or continuing loss to or diminution of the estate - the Court should undertake a two-step consideration: (1) whether the Debtor has declining cash flows or declining asset values; and (2) whether the Debtor will be able to stop the bleeding and return to solid financial footing within a reasonable amount of time. *In re Patel*, No. 5:11-BK-73416, 2012 WL 3764523 (Bankr. W.D. Ark. Aug. 23, 2012); 7 *Collier on Bankruptcy*, 1112.04[6][a] (16th ed. 2013); *see also In re Creekside Senior Apartments, L.P.*, 489

---

[1] Now (b)(4)(A), as of enactment of BAPCPA in 2005.

B.R. 51, 61 (6th Cir. B.A.P. 2013) (The ongoing loss may be substantial or continuing - but needn't be both to satisfy the first prong).

For the second prong, the Court should determine "whether the debtor's business prospects justify continuance of the reorganization effort." *Id.* "'Rehabilitation' is a different and . . . much more demanding standard than 'reorganization.'" *In re Creekside*, 489 B.R. at 61. "Rehabilitation means to reestablish a business." 7 *Collier on Bankruptcy*, 1112.04[6][a][ii] (16th ed. 2013). "If 'the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's enterprise back on a solid financial footing within a reasonable amount of time,' then the debtor may have a reasonable likelihood of rehabilitation." *In re Creekside*, 489 B.R. at 61 (quoting *In re Costa Bonita Beach Resort, Inc.*, 479 B.R. 14, 42 (Bankr. D.P.R. 2012)). Importantly, "[a] debtor who is unable to service its debt at the outset of the case and remains unable to do so for the foreseeable future does not have a reasonable likelihood of rehabilitation." *Id.* (Citing *In re Fall*, 405 B.R. 863, 869 (Bankr. N.D. Ohio 2009).)

Considering this standard as applied to the facts of the Bankruptcy Case, there is more than sufficient cause for dismissal. First, the Debtor's most recent monthly operating report demonstrates that since the filing date of the Debtor's petition in the Bankruptcy Case, the Debtor has continually suffered average monthly losses in excess of $150,000.00 (Document #81 in the Bankruptcy Case, page 4). And the Debtor's projections of future cash flow demonstrate that the Debtor will not experience a positive cash flow until 2017. In addition, that the accruing interest alone on the Chambers Claim is in excess of $20,000.00 each month.

Second, it is not clear if the Debtor will be able to place its business back on a solid financial footing within a reasonable amount of time. The Debtor's rehabilitation is completely reliant on Allied Bank's dividend in order for any attempt at rehabilitation. However, any dividend paid by

Allied Bank is not certain given that Allied Bank is under regulatory restrictions preventing dividend distributions to the Debtor.

It is readily apparent that the Debtor is in a worse position than it was when the Bankruptcy Case was filed and will be unable to service its debt for the foreseeable future. Pursuant to *In re Creekside*, there is not a reasonable likelihood of rehabilitation and "cause" exists for conversion or dismissal. 489 B.R. at 61. Therefore, the Court should convert or dismiss the Bankruptcy Case for "cause" pursuant to 11 U.S.C. § 1112(b)(4)(A).

**Equitable considerations favor conversion or dismissal.**

Equitable concerns that may be present in a typical Chapter 11 case, which may prevent conversion or dismissal, are not present in the Bankruptcy Case. The Debtor has no known employees, and as a result, no one will lose his or her job as a result of the failure of the Debtor. Likewise, the Debtor's existing equity-holders are unwilling to contribute any new money into the Debtor in an effort to produce a viable entity. Instead, the Debtor and the Debtor's existing equity-holders desire to be allowed, pursuant to the Plan, to reorganize solely on the backs of the Debtor's creditors and all at the sole risk of the Debtor's creditors. The lack of new money demonstrates the Debtor's equity-holders' lack of commitment to maximize value for the Debtor's creditors. Conversion or dismissal of the Bankruptcy Case is appropriate at this time.

## CONCLUSION

Chambers Bank, having shown that cause exists to convert or dismiss the Bankruptcy Case pursuant to 11 U.S.C. § 1112, now requests that the Court convert or dismiss the Bankruptcy Case, for costs and attorney's fees, and for all other just and proper relief.

Respectfully submitted,

CHAMBERS BANK,

By Its Attorneys:

DOVER DIXON HORNE PLLC
425 West Capitol, Suite 3700
P. O. Box 3363
Little Rock, Arkansas 72203-3363
(501) 375-9151

By: */s/ James Paul Beachboard*
Garland W. Binns, Esq.
Arkansas Bar No. 74012
James Paul Beachboard, Esq.
Arkansas Bar No. 83018

## CERTIFICATE OF SERVICE

I, James Paul Beachboard, do hereby certify that on the 12th day of December, 2014, a true and correct copy of the foregoing Motion was: (i) filed via the U. S. Bankruptcy Court's ECF system, which system sent an electronic copy of the same to all parties indicated on the Court's electronic filing receipt; and (ii) mailed by United States Mail, first class, with sufficient postage prepaid, to:

Stanley V. Bond, Esq.
525 South School Avenue, #100
P.O. Box 1893
Fayetteville, Arkansas 72702-1893

Rex M. Terry, Esq.
HARDIN, JESSON & TERRY, PLC
P.O. Box 10127
Fort Smith, Arkansas 72917-0127

U.S. Trustee
Office of the U.S. Trustee
Attention: Joseph DiPietro, Trial Attorney
200 West Capitol, Suite 1200
Little Rock, Arkansas 72201-3344

Charles S. Trantham, Esq.
STOCKLAND & TRANTHAM, P.A.
157 East Colt Drive, Suite 1
P.O. Box 1723
Fayetteville, Arkansas 72703

John J. Kane, Esq.
Kane Russell Coleman & Logan PC
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201

Mark N. Ohrenberger, Esq.
323 Center Street, Suite 200
Little Rock, Arkansas 72201

Johnathan Dwaine Horton, Esq.
WRIGHT, LINDSEY & JENNINGS, LLP
200 W. Capitol Ave., Suite 2300
Little Rock, Arkansas 72201

*/s/ James Paul Beachboard*
James Paul Beachboard

F:\clients\28695-CHAMBERS BANK\28695.003\2014-12-05 Motion to Dismiss Final.wpd

16